# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

No. 09 Civ. 6366 (RJS)

NIKE, INC.,

Plaintiff,

VERSUS

ALREADY, LLC, D/B/A YUMS,

Defendant.

MEMORANDUM AND ORDER
January 20, 2011

RICHARD J. SULLIVAN, District Judge:

This action for trademark infringement, false designation of origin, unfair competition, and trademark dilution arises under the Trademark Act of 1946 (the "Lanham Act"), New York General Business Law Section 360, and New York state common law. Now before the Court is Plaintiff Nike, Inc.'s motion to dismiss its own complaint with prejudice and to dismiss the counterclaims of Defendant Already, LLC, d/b/a Yums, without prejudice. For the following reasons, Plaintiff's motion is granted in its entirety.

## I. BACKGROUND

### A. Facts

Plaintiff, an Oregon corporation, is a leading designer, marketer, and distributor of athletic footwear. (Compl. ¶¶ 1, 7.) In 1982, Plaintiff designed an athletic shoe called the Air Force I. (*Id.* ¶ 9.) Since that time, Plaintiff has produced the shoe in over 1,700 different color combinations and has sold it around the world. (*Id.*) Today, Plaintiff sells millions of pairs of Air Force I shoes per year. (*Id.*)

Since June 24, 2008, Plaintiff has held U.S. Trademark Registration No. 3,451,905 (the "905 Registration") for an athletic shoe

design, which it claims is the Air Force I design. (*Id.* ¶ 11.) Specifically, the 905 Registration covers

> the design of stitching on the exterior of the shoe, the design of the material panels that form the body of the shoe, the design of the wavy panel on top of the shoe that encompasses eyelets for the shoe laces, the design of the vertical ridge pattern on the sides of the sole of the shoe, and the relative position of these elements to each other.

(Compl., Ex. A.)

Defendant, a Texas corporation, also sells, among other items, athletic footwear. (*Id.* ¶¶ 2, 14.) In its Sweet line of athletic shoes, Defendant sells two shoes called Sugar and Soulja Boy. (*Id.* ¶ 15.) Plaintiff's complaint alleges that these shoes infringe the 905 Registration and its common law trademark rights (together, the "Nike mark"). (*Id.* ¶¶ 19-55.)

### B. Procedural History

Plaintiff filed the complaint in this action on July 16, 2009. On November 19, 2009, Defendant filed its answer and counterclaims seeking a declaratory judgment that (1) the mark depicted in the 905 Registration is invalid under federal or New York state law; (2) the design of the Air Force I shoe is not a valid trademark under federal or New York state law; (3) Defendant "has not infringed any rights that Nike may have" in the mark depicted in the 905 Registration; and (4) Defendant "has not infringed any rights that Nike may have in

the configuration" of the Air Force I. (Def.'s Answer, Doc. No. 17, ¶¶ ii-v.) Additionally, Defendant seeks cancellation of the 905 Registration pursuant to 15 U.S.C. § 1119 and the award of attorney's fees pursuant to 15 U.S.C. § 1117. (*Id.* ¶¶ vi-vii.)

In the middle of discovery, Plaintiff delivered a covenant not to sue, dated March 19, 2010, to Defendant. (*See* Declaration of Erik S. Maurer ("Maurer Decl.") ¶ 9 & Ex. A, dated April 12, 2010.) The covenant defines the "Nike Mark" as the "federal and common law trademark rights in the design of Nike's Air Force I low shoe," including the 905 Registration. (*Id.* at Ex. A.) The covenant provides that, because Defendant's actions "no longer infringe or dilute the Nike Mark at a level sufficient to warrant the substantial time and expense of continued litigation," Plaintiff "unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity" against Defendant or any related entities

> on account of any possible cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law in the United States relating to the Nike Mark based on the appearance of any of [Defendant's] current and/or previous footwear product designs, and any colorable imitations thereof, regardless of whether that footwear is produced, distributed, offered for sale, advertised, sold, or otherwise

2

used in commerce before or after the Effective Date of this Covenant.

(*Id.*)

In light of this covenant, Plaintiff petitioned the Court to dismiss its action and Defendant's counterclaims pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. Defendant consented to the dismissal of Plaintiff's causes of action with prejudice but objected to the dismissal of its counterclaims. Accordingly, on April 12, 2010, Plaintiff filed the instant motion seeking to dismiss its claims with prejudice and to dismiss Defendant's counterclaims without prejudice. Defendant filed its opposition to Plaintiff's motion on April 26, 2010, and Plaintiff filed its reply on May 5, 2010.

## II. DISCUSSION

### A. Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In the trial court, of course, a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993); *see also ICOS Vision Sys. Corp., N.V. v. Scanner Techs. Corp.*, 699 F. Supp. 2d 664, 667 (S.D.N.Y. 2010) ("[T]he party 'seeking to invoke the subject matter jurisdiction of the district court' . . . bears the burden of demonstrating that there is subject matter jurisdiction in the case.") (quoting *Scelsa v.*

*City Univ. of N.Y.*, 76 F.3d 37, 40 (2d Cir. 1996)). Accordingly, although Defendant argues otherwise, because it is seeking to invoke the Court's declaratory judgment jurisdiction, it bears the burden of demonstrating that the Court has subject matter jurisdiction over its counterclaims.

### B. Analysis

As an initial matter, the Court need not focus on the dismissal of Plaintiff's claims in this action, as Plaintiff has moved for their dismissal with prejudice and Defendant consents to this relief. (Def.'s Opp'n at 14.) Accordingly, the Court grants Plaintiff's motion with respect to its claims on consent.

The parties dispute, however, whether the Court may retain jurisdiction over Defendant's counterclaims. The issue is whether, after the March 19 covenant, an actual controversy exists such that the Court can continue to exercise jurisdiction over Defendant's counterclaims seeking declaratory relief and cancellation of the 905 Registration. For the following reasons, the Court holds that it does not.

#### 1. Declaratory Relief

Plaintiff maintains that the March 19 covenant divests the Court of jurisdiction over Defendant's counterclaims seeking declaratory relief, as it strips this action of a justiciable controversy. Although Defendant agrees that the March 19 covenant is enforceable, it argues that the Court retains jurisdiction over its counterclaims because a dispute between the parties remains active and live. (Def.'s Opp'n at 16.)

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within

3

its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Additionally, "in order for a federal court to have jurisdiction over an 'actual controversy,' a federal question 'arising under the Constitution, laws or treaties of the United States' must be involved, 28 U.S.C. § 1331, since it is well-settled that the Declaratory Judgment Act does not expand the jurisdiction of the federal courts." *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 594 (2d Cir. 1996) (per curiam), *abrogated on other grounds by MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). Accordingly, the Court lacks authority to grant any declaratory relief unless both a federal question and an actual controversy exist. *Id.* Additionally, the actual controversy must remain throughout the entirety of the action, not merely at the initiation of the action. *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

What constitutes an actual controversy is well settled. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In *MedImmune*, the Supreme Court clarified that the proper analysis for whether a case or controversy exists in patent actions seeking declaratory relief is the same analysis as in any other declaratory judgment action.[1] 549 U.S. at

127, 132. In other words, the proper analysis remains one that considers all of the circumstances in the particular case. *See id.*; *see also ICOS*, 699 F. Supp. 2d at 668-69 (explaining that any claim for declaratory relief must present "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment") (internal quotation marks omitted).

Prior to *MedImmune*, the Second Circuit held that in "declaratory judgment action[s] involving trademarks," courts are to apply a two-prong test to determine whether an actual case or controversy exists. *See Starter*, 84 F.3d at 595. Specifically, courts are to ascertain "(1) [whether] the defendant's conduct created a real and reasonable apprehension of liability on the part of the plaintiff, and (2) [whether] the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant." *Id.* The Second Circuit clarified that the second prong entails the party seeking a declaratory judgment to have "demonstrated the imminent intent and ability to use [the mark on its products]." *Id.* at 596. Additionally, the party must demonstrate that it has more than a "vague or general desire" to use the mark. *Id.*

Whether the Second Circuit test in its entirety survives *MedImmune* is unclear. *Compare Bruce Winston Gem Corp. v. Harry Winston, Inc.*, No. 09 Civ. 7352 (JGK), 2010 WL 3629592, at *4 (S.D.N.Y.

---

[1] Although this case is a trademark, not patent, case, "[d]eclaratory judgment actions involving trademarks are analogous to those involving patents, and

principles applicable to declaratory judgment actions involving patents are generally applicable with respect to trademarks." *Starter*, 84 F.3d at 595, *abrogated on other grounds by MedImmune*, 549 U.S. at 118 (internal citations omitted).

Sept. 16, 2010) (stating that "[a]fter *MedImmune*, the first prong of the *Starter* test cannot survive"), *with Analect, LLC v. Fifth Third Bancorp*, 380 F. App'x. 54, 56 (2d Cir. 2010) (citing to the first prong from *Starter*) (summary order). However, what is clear is that the Defendant must, "under all the circumstances," demonstrate "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" in order for the Court to retain jurisdiction over its counterclaims. *MedImmune*, 549 U.S. at 127 (internal quotation marks omitted). Because of the March 19 covenant, Defendant cannot meet that burden.

"Whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009). "Courts look to the precise language of the covenant or agreement in determining its scope and whether declaratory judgment jurisdiction is appropriate." *ICOS*, 699 F. Supp. 2d at 669. "Where a covenant not to sue does not extend to future sales of the same product as was previously sold, such an agreement will not divest the trial court of declaratory judgment jurisdiction." *Id.* (internal citations and quotation marks omitted). "Moreover, a court is not divested of jurisdiction where the declaratory judgment plaintiff has taken 'meaningful preparatory steps' toward developing new or updated [products] not covered by the [covenant not to sue]." *Id.* (citing *Diamonds.net LLC v. Idex Online, Ltd.*, 590 F. Supp. 2d 593, 600 (S.D.N.Y. 2008).

The March 19 covenant clearly extends to future sales of Defendant's current

footwear designs, including the Sugar and Soulja Boy shoes, as well as to future sales of "colorable imitations" of those shoes.[2] This case, therefore, is easily distinguishable from *Diamonds.net* — a case cited by Defendant — in which Judge Holwell found that the court retained subject matter jurisdiction over Defendant's declaratory judgment counterclaims after the plaintiff executed a covenant not to sue. *See Diamonds.net*, 590 F. Supp. 2d at 595. That covenant did not extinguish any justiciable controversy because, unlike the March 19 covenant, it pertained only to the allegedly infringing website as it "previously existed" or "currently exist[ed]" on the date of the covenant. *Id.* (alteration in original).

There is also nothing before the Court to indicate that Defendant "has taken 'meaningful preparatory steps' toward developing new or updated [products] not covered by the [covenant not to sue]." *ICOS*, 699 F. Supp. 2d at 669 (citing *Diamonds.net*, 590 F. Supp. 2d at 600). Setting aside the fact that — as already explained — few "new or updated" products could potentially infringe the Nike Mark *and* not be covered by the March 19 covenant, Defendant does not allege that it has taken any "meaningful preparatory steps" to create shoes that could potentially infringe the Nike Mark. Meaningful preparatory steps would be those "'preparations for production which [suggest] that, but for a finding that the product infringes or for extraordinary and unforeseen contingencies, the [party seeking a declaratory judgment of infringement]

---

[2] Although the March 19 covenant leaves "colorable imitation" undefined, given a broad reading of the phrase, it seems clear that any of Defendant's future products that arguably infringed the Nike Mark would be "colorable imitations" of the Sugar or Soulja Boy shoes. (Maurer Decl., Ex. A.)

5

would and could begin production immediately.'" *Diamond.net*, 590 F. Supp. 2d at 599 (quoting *Sweetheart Plastics, Inc. v. Ill. Tool Works, Inc.*, 439 F.2d 871, 875 (1st Cir. 1971)). The affidavits submitted by Defendant do not show that Defendant has taken any meaningful preparatory steps to create shoes that would infringe the Nike Mark, given the March 19 covenant. Rather, the affidavits describe only forthcoming modifications of the Sweet shoe line, as well as other shoe lines. (*See, e.g.*, Affidavit of John P. McDade ("McDade Aff.") ¶¶ 8, 13, dated April 23, 2010.) The March 19 Covenant, however, covers all future "colorable imitations" of the Sugar or Soulja Boy shoes, and the Court has no indication that any of Defendant's forthcoming models would extend beyond this broad language. Accordingly, neither the "future sales" factor nor the "meaningful preparatory steps" factor favor Defendant. *ICOS*, 699 F. Supp. 2d at 669.

In fact, none of the rationales influencing then-District Judge Chin's decision in *ICOS* are present in this action. In four related cases before Judge Chin, the *ICOS* plaintiffs sought declaratory judgments that several of the defendant's patents were invalid and that they were not infringing those patents. *Id.* at 665. After the defendant delivered covenants not to sue to the plaintiffs, the defendants moved to dismiss the four actions under Rule 12(b)(1). *Id.* at 666-67. Finding that the covenants did not divest the court of subject matter jurisdiction, Judge Chin denied the defendant's motion. *Id.* His decision was based on the fact that (1) the covenants did not "explicitly cover future sales of products that existed at the time of the covenants," (2) the covenants did not "cover future products," (3) the covenants did not cover

related patents involving the same underlying technology, (4) plaintiffs refused to amend the covenants in order to cure their defects, and (5) the parties had a history of litigation. *Id.* at 670-71. With respect to the first two reasons, the Court repeats that the March 19 covenant clearly applies to future sales of products that existed at the time of covenant and also covers future, new products that would be "colorable imitations" of any of Defendant's previous or current footwear designs. The third and fourth factors are not present here, as the parties do not discuss any trademark related to the 905 Registration and the Court has not asked Plaintiff — and Plaintiff has not refused — to cure any defect in the March 19 covenant.

With respect to the final reason — the parties' litigation history — the only other action between the parties of which the Court is aware is a complaint filed *by Defendant* in Texas after Plaintiff filed this action. (*See* Maurer Decl. ¶ 5.) On the other hand, the parties in *ICOS* had a long, protracted history of litigation, with multiple actions filed by both parties, spanning the course of a decade. *ICOS*, 699 F. Supp. 2d at 666-67; *see also Diamonds.net*, 590 F. Supp. 2d at 598 ("While a threat of suit is not necessary to declaratory judgment jurisdiction, an aggressive litigation strategy such as plaintiffs' may signal the existence of an actual controversy.") (internal citation omitted). Therefore, the Court has no reason to believe that Plaintiff has plans to bring any future action against Defendant.

Nevertheless, Defendant argues that its counterclaims standing alone — even after the March 19 covenant — present a justiciable controversy. It argues that the 905 Registration continues "to interfere with

Yums' ability to carry on a lawful business in making and selling YUMS-branded shoes." (Def.'s Opp'n at 19.) In support of this assertion, Defendant has submitted affidavits from potential investors. For example, the Affidavit of Vincent Piras (the "Piras Aff."), dated April 23, 2010, states that, although he has seen the 905 Registration and the March 19 covenant, he continues to refuse to invest in Defendant "because the covenant discusses application only to existing designs and colorable imitations thereof." (Piras Aff. ¶ 6.) Piras further explains, "I would *consider* reinvesting in Yums if the 905 Registration was cancelled *and* it was clearly established that Nike has no right to object to Yums [sic] sale of shoes *similar to* Air Force I." (*Id.* (emphases added).)

As an initial matter, Piras will only "consider" investing in Defendant if the 905 Registration was cancelled and he was assured that Nike has no right to object to shoes similar to the Air Force I. (*See also* Affidavit of Kyle Schnable, ¶ 6, dated April 23, 2010 ("[I]f the 905 Registration was cancelled and it was clearly established that Nike has no right to object to Yums [sic] sale of shoes *similar to* the Air Force I, I would strongly *reconsider*" investing in Defendant.") (emphases added); Affidavit of Marvin Wilson, ¶ 6, dated April 25, 2010 (substantially the same).) Thus, there is no evidence that even the cancellation of the 905 Registration *would* persuade investors like Piras to invest in Defendant. Rather, cancellation of the 905 Registration only *might* persuade these investors.

Additionally, the Court does not place the same significance as Piras on the distinction between shoe designs "similar to" the Air Force I and designs that are

"colorable imitations" of current designs by Defendant. As described above, the Court interprets the phrase "colorable imitations" in the March 19 covenant broadly, and thus the Court sees little difference between the assurances Defendant's potential investors seek and the scope of the March 19 covenant.

Therefore, in light of the March 19 covenant, the Court concludes that the existence of the 905 Registration alone does not create a "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (internal quotation marks omitted); *see also Benitec*, 495 F.3d at 1347-48 (dismissing the defendant's counterclaims in light of the plaintiff's execution of a covenant not to sue); *Amerimax Real Estate Partners, Inc. v. RE/MAX Int'l, Inc.*, 600 F. Supp. 2d 1003, 1008-10 (N.D. Ill. 2009) (same); *Furminator, Inc. v. Ontel Prods. Corp.*, 246 F.R.D. 579, 590-92 (E.D. Mo. 2007) (same); *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1121-24 (N.D. Cal. 2007) (same).

## 2. Cancellation

Alternatively, Defendant maintains that its counterclaim seeking cancellation of the 905 Registration pursuant to 15 U.S.C. § 1119 is an independent basis for the Court's continued subject matter jurisdiction. The Court disagrees.

Section 1119 provides that "[i]n any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore cancelled registrations, and otherwise rectify the register with respect to

the registrations of any party to the action." 15 U.S.C § 1119. However, if no "action involving a registered mark" is before a district court, then a party seeking cancellation must obtain such relief from the United States Patent and Trademark Office. Significantly, the law is clear that "a federal court's authority to determine registrability . . . depends on a properly-instituted and otherwise jurisdictionally-supported action involving a registered trademark." *Manganaro Foods, Inc. v. Manganaro's Hero-Boy, Inc.*, No. 01 Civ. 849 (JGK), 2002 WL 1560789, at *10 (S.D.N.Y. July 15, 2002) (citations omitted); *see also Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 873-74 (3d Cir. 1992) ("[A] controversy as to the validity of or interference with a registered mark must exist before a district court has jurisdiction to grant the cancellation remedy."); McCarthy on Trademarks and Unfair Competition § 30:110 (4th ed. 2010) ("[Section 1119] alone does not create grounds for federal jurisdiction").

Defendant attempts to distinguish this action from such precedent by arguing that, at the time Defendant answered the complaint, the Court *had* jurisdiction to cancel the registration under Section 1119. In other words, it was only a subsequent event — the March 19 covenant — that divested the Court of jurisdiction. Defendant, in essence, argues that it is unfair for Plaintiff to have instituted this action, for Defendant to have properly counterclaimed for declaratory relief and cancellation, and then for Plaintiff's unilateral execution of the March 19 covenant to prevent the Court from deciding the validity of the 905 Registration.

Although some courts in other districts have agreed with Defendant's argument, *see, e.g., Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1085 (9th Cir. 2000), the Court is aware of no such authority in this Circuit. To the contrary, a long line of cases recognizes that Section 1119 does not provide for a concurrent remedy to seeking cancellation before the Patent and Trademark Office, if concurrent is "taken to mean . . . that an original suit may be instituted . . . in the district court for cancellation of another's federal registration where no other basis of jurisdiction is present. . . . [Rather, Section 1119] assumes a properly instituted and *otherwise jurisdictionally supportable* action involving a registered mark." *Univ. Sewing Mach. Co. v. Standard Sewing Equip. Corp.*, 185 F. Supp. 257, 260 (S.D.N.Y. 1960) (emphasis added); *see Bruce Winston*, 2010 WL 3629592 at *6 ("The existence of the dispute over the registrability of the plaintiff's mark is an insufficient basis to continue the action in this Court."); *cf. GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 241 (S.D.N.Y. 2000) (denying a motion to dismiss for lack of subject matter jurisdiction on the basis of the continued presence of a case or controversy, not due to the presence of a cancellation counterclaim itself).

The logical extension of these cases is that, if an event subsequent to the pleadings strips a court of jurisdiction over the action, the court is also stripped of the ability to order cancellation of a registered trademark pursuant to Section 1119.[3] *See, e.g., CIBER,*

---

[3] It is also worth noting that the Second Circuit has indicated in dicta that "[i]f a district court action involves only the issue of whether a mark is entitled to registration and if subject matter jurisdiction is available, the doctrine of primary jurisdiction might

*Inc. v. CIBER Consulting, Inc.*, 326 F. Supp. 2d 886, 892-93 (N.D. Ill. 2004) (dismissing a counterclaim for cancellation under Section 1119 for lack of a justiciable controversy after plaintiff's executed a covenant not to sue). After the March 19 covenant, there remains no "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. Therefore, the Court must dismiss Defendant's counterclaims. *See Sewing Mach.*, 185 F. Supp. at 260.

Although some inefficiency results from requiring Defendant to now institute an administrative proceeding before the Patent and Trademark Office in order to seek cancellation of the 905 Registration, "no amount of 'prudential reasons' or perceived increases in efficiency, however sound, can empower a federal court to hear a case where there is no extant case or controversy." *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010); *see also Diamonds.net*, 590 F. Supp. 2d at 596 (explaining that while federal jurisdiction should not be subject to the parties' manipulation, a court cannot "respond to jurisdictional gamesmanship" by simply continuing to exercise jurisdiction

---

well be applicable." *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 853 (2d Cir. 1988) (citation omitted). Because the doctrine of primary jurisdiction "guards against premature judicial encroachment upon an agency's sphere of responsibility and expertise," *id.* at 851, a district court facing such a situation should await a decision on registration from the Patent and Trademark Office, as "the benefits of awaiting the decision of the [Patent and Trademark Office] would rarely, if ever, be outweighed by the litigants' need for a prompt adjudication," *id.* at 853. This dicta lends support to the Court's conclusion that, in the present posture of this case, the Patent and Trademark Office is the proper venue for Defendant to seek cancellation.

unless Article III's case or controversy requirement is met, as it is "an unwaivable constitutional limitation on the authority of the federal courts"); *CIBER*, 326 F. Supp. 2d at 892-93 (same).

Accordingly, the counterclaims of Defendant are dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

### 3. Attorney's Fees

On the basis of the March 19 covenant, Defendant is petitioning for an award of attorney's fees under Section 35 of the Lanham Act. That section, however, provides for the recovery of attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). In order for a case to be considered "exceptional," the Second Circuit requires a showing of bad faith. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194 (2d Cir. 1996). "An action is brought in bad faith when the claims are 'entirely without color and made for reasons of harassment or delay or for other improper purposes.'" *Gamla Enters. N. Am., Inc. v. Lunor-Brillen Design U. Vertriebs GmbH*, No. 98 Civ. 992 (MGC), 2000 WL 193120, at *4 (S.D.N.Y. Feb. 17, 2000) (quoting *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir. 1977)). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985). Accordingly, "defendants are rarely awarded attorney's fees in trademark infringement cases." *Banff, Ltd. v. Colberts, Inc.*, 810 F. Supp. 79, 80 n.2 (S.D.N.Y. 1992), *aff'd*, 996 F.2d 33 (2d Cir. 1993).

The Court finds that this case, in which Plaintiff moved to voluntarily dismiss its claims at an early stage of litigation, is not exceptional such that Defendant is entitled to attorney's fees and costs under Section 1117. *Cf. Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 655 (2d Cir. 1988) (affirming an award of attorney's fees to defendants in a trademark action where plaintiffs filed seventeen trademark applications in order "to instigate 'vexatious' litigation"); *Gamla*, 2000 WL 193120, at *5. Accordingly, Defendant's request for an award of attorney's fees is denied.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss its claims with prejudice and Defendant's counterclaims without prejudice is GRANTED in its entirety.

The Clerk of the Court is directed to terminate the motion located at Doc. No. 35 and to close this case.

SO ORDERED.

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

Dated: January 20, 2011
     New York, New York

\*\*\*

Plaintiff is represented by Keith E. Sharkin of Dickstein Shapiro LLP, 1633 Avenue of the Americas, New York, New York, 10019; and Christopher J. Renk and Erik S. Maurer of Banner & Witcoff, Ltd., 10 S. Wacker Drive, Suite 3000, Chicago, Illinois, 60606. Defendant is represented by James W. Dabney, Victoria J. Doyle, Randy C. Eisensmith, and Elizabeth P. Kozlowski of Fried, Frank, Harris, Shriver, & Jacobson, LLP, One New York Plaza, New York, New York, 10004-1980.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/21/11